## 48655. PURVIS v. TATUM.

PANNELL, Judge.

C. H. Purvis brought a complaint against Jo Wayne Tatum seeking recovery of damages to complainant caused by the injuries received as the result of the alleged negligence of the defendant in driving a motor vehicle into the rear of complainant's motor vehicle. The claim for damage to complainant's motor vehicle was stricken. Upon the trial, the jury found in favor of the complainant in the amount of $5,000. Complainant filed a motion for new trial and appeals to this court from judgment on the verdict. *Held:*

1. A juror was related within the prohibited degree (Code § 59-716) to two partners of six in a partnership known as Tatum Brothers, all of the partners being named Tatum. This partnership employed the defendant in the present case, and the partnership's liability insurance carrier was defending the action. Neither the firm nor its members were parties to the action, nor does it appear that the partnership or its members have any financial or business benefit or detriment accruing to them depending upon the outcome of the case. It would appear, therefore, that the juror was not disqualified because of relationship to a person or persons "interested in the outcome" of the case within the meaning of this statute. Furthermore, the plaintiff's attorney, after the selection of the jury and prior to hearing testimony, when discussing with the trial judge whether this juror's employment by the Tatum Brothers would disqualify him, at which point the court inquired whether the juror

was related to the partners, plaintiffs' counsel affirmatively stated to the court that the juror *was not* related to them. Having misled the court and by such action prevented further inquiry by the court as to such relationship to Tatum Brothers, appellant is estopped to now claim he did not know the juror was related. There is a decided difference in stating relationships did not exist and in stating one did not know whether it did or did not exist. See *Kennedy v. State,* 191 Ga. 22, 23 (6) (11 SE2d 179). Further, the affidavit of the attorney for the plaintiff presented on the motion for new trial, while delineating the bare facts, fails to state what inquiry, if any, he made in reference thereto, or disclose by factual statements any diligent effort on his or his client's part to ascertain the truth, nor does it disclose that he and his client did not know of such relationship at the time of trial. See *Jennings v. Autry,* 94 Ga. App. 344 (5) (94 SE2d 629) and *Williams v. State,* 206 Ga. 107 (2) (55 SE2d 589). There was no error in overruling these grounds of the motion for new trial.

2. Just prior to counsel's opening statements to the jury, the clerk of the trial court requested of the trial judge that he might be excused to go to his office in the courthouse to attend to some business there, subject to the call of the court. The trial judge granted the request. See Code § 24-2714 (2). It seems apparent from the transcript this was done in the presence and hearing of appellant's counsel (and counsel makes no contention to the contrary). In the absence of any objection by appellant or his counsel or his showing of harm therefrom, we are constrained to hold that the error, if one, is a harmless error.

3. The trial judge, over plaintiff's objection, required plaintiff to testify before reading into the evidence the deposition of one of the plaintiff's doctors or to be sequestered with the other witnesses during such reading. Plaintiff testified first. This was a matter within the discretion of the trial judge and we find no error therein. *Tift v. Jones,* 52 Ga. 538 (4); *Davis v. Atlanta Coca-Cola Bottling Co.,*119 Ga. App. 422, 423 (167 SE2d 231).

4. There was evidence adduced in the case that

plaintiff was treated by certain doctors for the alleged injuries occasioned by the defendant, and also spent time in certain hospitals. There was also evidence that he was treated by certain doctors and spent time in a hospital for an operation not connected with the alleged injuries sued for. His income tax returns for the years subsequent to the alleged injuries sued for claimed deductions for doctors bills not referred to and about which no evidence was introduced. The attorney for the defendant, while commenting on the information in plaintiff's tax returns for one of the years for which he was claiming special damages for doctors bills, etc., argued "Let's move on to '70. He was out a month in '70 and still made *more money than he made the year before and he did that . . did that at a time when he obviously was, over these periods of time, seeking and getting considerable medical attention* because if you'll note here on his 1968 return, in 1968, he saw Doctors Drake . . C. H. Drake, Doctor Hubert Darby, Doctor Curtis 'Haymes,' Doctor 'Caral' Brennen, Doctor L. H. Morgan, Doctor R. B. Gottschalk, and Doctor L. R. Lanier and Doctor D. W. Fillingham, and Doctor J. Harry Duncan and was at Memorial Medical Center and the Howard Clinical Laboratory. Now, that was in 1968. *Now, all of those don't relate to this accident.* All right, in 1969, he experienced all that income according to these medical deductions. Uh, he's got a page here that's Strickland Pharmacy, Central Pharmacy, Doctor C. H. Drake, Curtis Hames, Brennan, Doctor Scarbrough, Howard Clinical Laboratory, Doctor Morgan, Doctor Hubert Darby, Ophthalmology Associates and Hodges Optical Company. *Now, all those don't relate to this because you've heard the testimony about who he saw with regard to this accident, Doctor Hames. . . "* The plaintiff objected to this line of argument as not supported by the evidence stating: "Nothing shows on these income tax returns that [plaintiff] visited those doctors and I think it's gross misuse of the closing argument's function to *imply that he did to pervert the evidence,"* and the trial judge, in the presence of the jury, said to defendant's counsel: *"I believe you said a time or two that he saw these doctors. I . . . I don't believe that would . . . could be inferred from the evidence,"* and further, "I would say

that you shouldn't draw emphasis from the — the evidence that is not in the testimony." No further reprimand or instructions to the jury were given by the trial judge, nor were they requested by the plaintiff. There was no evidence in the case indicating whether these additional medical bills were for the plaintiff or some member of his family. Under these circumstances, the argument might have been authorized; if not, it was not such an error, which after the instruction of the trial judge, would require a reversal.

5. The evidence was uncontradicted to the effect that plaintiff was an automobile mechanic who did all auto repair work in a small repair shop, except for that done by his employer, and that he was not paid by the hour or day, or week, or month, but was paid by a commission on the job regardless of the time consumed, although he drew his pay or commission each week. The bookkeeper of the employer, who kept the records as to plaintiff's commissions, was being interrogated and the following occurred: "Q. And you're also, *I believe you testified by being there to see him, are in a position to know the hours that he's worked, and you've already testified about that,* . . . A. *That's right.* Q. . . . correct? A. Correct. Q. *So, I'll now ask you if you have a figure that you could give this Jury that he made less in — in — in '70 than he did in '69 or '68?* Mr. Sharpe: Uh, I still have to object to it. I don't think that, uh, the proper foundation has been laid for that question. It calls for a speculative answer. The plaintiff testified earlier with regard to that same information, and, certainly, he's better aware of that situation than anyone. Now, I know this lady keeps the books, but so many factors enter into that, that I don't see how, intelligently and honestly, she could give an answer to that question . . . Mr. Dubberly: It's true, Your Honor, that the plaintiff did testify. Excuse me Malone. Mr. Sharpe: She certainly could testify from her personal observation *as to the numbers of hours he worked.* Uh, there's no objection to that, but when you start fixing dollar value in terms of, uh, income, I don't think she's in a position to intelligently answer that question. The Court: I sustain that objection at this point." An estimate of lost earnings based solely upon the *number of hours*

not worked when the employee was not paid by the hour would be mere speculation. The objection was properly sustained.

6. The verdict was authorized by the evidence. Appellant contends that the verdict was less than the special damages proven to wit: hospital and medical expenses and lost earnings. There was no dispute as to the medical and hospital expenses as finally shown by the bills or statements therefor introduced in evidence. Some of the amounts were altered by agreement or by withdrawal when written evidence was introduced. These bills came to $2,693.76. Appellant claims they came to $2,974.57. The plaintiff's own tax returns show he earned more after the accident than before, although he testified generally that he would have made about $2,500 more per year up to the trial. The appellant, by averaging his earnings when working, then breaking this down to so much per day then applying the daily rate to the time claimed as lost work attempts to show that lost time spent with doctors and in hospitals alone will account for $3,760.34 lost earnings, which added to the medical bills (whether ours or appellant's figures) would amount to more than the verdict. Neither this general testimony by the appellant nor the averaging method used by appellant's counsel *demands* a finding by the jury (even if it could be used by the jury) that appellant's lost earnings were as claimed. Lost earnings are recoverable as special damage and lost earning capacity is recoverable as general damages, and are not the same thing. Even should we assume that a showing of inability to work at certain times as formerly worked or for the same period of time as formerly worked due to the injury may, alone, show loss of capacity, it is not sufficient to show without contradiction the appellant lost a *certain* amount of earnings. Since appellant did work by the job and was paid by the job and there is no showing that he had any jobs waiting for him at the times he was unable to work or if so what they were, or that if waiting for him he did not have the opportunity later to do these jobs, we cannot say that the evidence demanded a finding as contended, although it may have been authorized. Nor do we find the verdict so small, in view of the evidence, as

to authorize a finding of bias or prejudice on the part of the jury.

*Judgment affirmed. Eberhardt, P. J., and Stolz, J., concur.*

ARGUED OCTOBER 5, 1973 — DECIDED FEBRUARY 18, 1974 — REHEARING DENIED MARCH 5, 1974.

*M. Francis Stubbs, B. Daniel Dubberly, Jr.,* for appellant.

*Sharpe, Hartley & Newton, Hugh B. McNatt,* for appellee.